1

X1CLSWARSAME                         SEALED

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4

5              v.                              11 Cr. 559

6

7    AHMED ABDULKADIR WARSAME,

                    Defendant.
8
     ------------------------------x
9
                                          December 21, 2011
10                                        4:30 p.m.

11   Before:

12                    HON. COLLEEN McMAHON,

13                                          District Judge

14                         APPEARANCES

15   PREET BHARARA
           United States Attorney for the
16         Southern District of New York
     BENJAMIN NAFTALIS,
17   ADAM HICKEY,
           Assistant United States Attorneys
18
     PRIYA CHAUDHRY, ESQ.
19         Attorney for Defendant

20   ALSO PRESENT:   ABASS GOFFREY (FBI)
                     STEFANIE RODDY (FBI)
21

22

23

24

25

X1CLSWARSAME                 SEALED

1      (Case called)

2          MR. NAFTALIS:  Benjamin Naftalis, Adam Hickey for the

3   government.  We are joined by Special Agents Abass Goffrey and

4   Stefanie Roddy from the FBI.

5          MS. CHAUDHRY:  Good afternoon, Priya Chaudhry, for

6   Mr. Warsame, who is present in custody and standing to my left.

7          THE COURT:  Good afternoon.

8          All right, this matter is on for conference and I

9   believe we are going to have a plea, is that correct?

10  Mr. Naftalis?

11         MR. NAFTALIS:  That is our understanding.

12         THE COURT:  The record should reflect that the court

13  has granted the government's application made yesterday and

14  renewed this morning for an order directing that the courtroom

15  be closed; that the transcript of this plea and the defendant's

16  plea agreement be sealed and the docketing of this guilty plea,

17  should a guilty plea ultimately be entered, be delayed all

18  until further order of this court.  The court's order provides

19  that the government is to report every 90 days after the

20  execution of this order regarding the continuing need to

21  maintain these matters under seal, and I would appreciate in

22  particular being apprised of any developments in a case

23  presently pending before another judge of this court which is

24  scheduled for trial at some point in the foreseeable future.

25         Okay.

3

X1CLSWARSAME                    SEALED

1           Ms. Chaudhry, is it in fact the case that your client

2    wishes to enter a plea of guilty to certain counts in the

3    indictment against him?

4           MS. CHAUDHRY:  Yes, your Honor.  It's our intention to

5    withdraw Mr. Warsame's not guilty plea to all 9 counts and

6    instead enter a guilty plea to all 9 counts of the indictment

7    against him.

8           THE COURT:  Is that the government's understanding,

9    that the defendant is going to plead to the indictment?

10          MR. NAFTALIS:  Yes, your Honor.

11          THE COURT:  Okay.

12          Mr. Warsame has on prior occasions had an interpreter.

13   He has also addressed himself to counsel and to the court in

14   English.

15          Ms. Chaudhry, do you want anything on the record with

16   respect to your client's need for a Somali interpreter?  I note

17   none is present.

18          MS. CHAUDHRY:  Your Honor, Mr. Warsame has been able

19   to communicate with me without an interpreter.  He is fluent in

20   English and does not require, nor asks, for one today.

21          THE COURT:  Thank you, Ms. Chaudhry.

22   BY THE COURT:

23   Q.  Mr. Warsame, good afternoon, sir.

24   A.  Good afternoon, your Honor.

25   Q.  I want to tell you -- first of all, you may have a seat.

X1CLSWARSAME                SEALED

1  Until the very end of these proceedings you may remain seated.

2  I will tell you when you should stand.

3          MS. CHAUDHRY:  Your Honor, before we go further, I

4  just wanted to let the court know that he is fluent in English

5  but I have I have let Mr. Warsame know that if there is a word

6  that you use that he doesn't know he will ask me and I will

7  explain it to him.

8          THE COURT:  Okay.

9  BY THE COURT:

10  Q.  First of all, Mr. Warsame, I want to explain something to

11  you.  This is not a trial.  This is what we call a hearing.

12  It's a proceeding that we are holding because Ms. Chaudhry and

13  the lawyers for the government have said to me that you are

14  prepared today to enter a plea of guilty to the 9 counts that

15  are charged against you in a formal charging document called an

16  indictment.

17          I have to satisfy myself in my own mind that you

18  understand what your rights are and that if you decide you want

19  to plead guilty, you are giving up those rights of your own

20  free will.  I have to satisfy myself on these points and that

21  is why we are having this hearing.

22          Do you understand what I just said to you?

23  A.  Yes, your Honor, I understand all of my rights.

24  Q.  Well, I am going to tell you all of your rights so you can

25  be sure you understand them.  But the first thing you need to

X1CLSWARSAME                    SEALED

1   understand is that you have a right to understand everything

2   that is going on in this courtroom.  So if I say something and

3   you don't understand what I am saying please stop me and talk

4   to Ms. Chaudhry and we will see what we have to do in order to

5   proceed, okay?

6   A.   Okay.

7   Q.   Thank you.

8           The first right you have is the right to an attorney,

9   to the services of a lawyer, to someone to represent you.

10  Today, yesterday, tomorrow, as long as this court case exists,

11  you have the right to a lawyer.  Ms. Chaudhry is your lawyer

12  and you have the right to talk to her at any time during these

13  proceedings.  So if you want to talk to her, you stop me, say I

14  want to talk to Ms. Chaudhry, and you can do that.

15          Do you understand?

16  A.   Yes, I understand, your Honor.

17  Q.   Okay.

18          THE COURT:  Ms. Chaudhry, you are, I believe,

19  appointed.

20          MS. CHAUDHRY:  I am, your Honor.

21          THE COURT:  Correct, since I appointed you.

22  BY THE COURT:

23  Q.   So I need to tell you, Mr. Warsame, that if you were not

24  happy with Ms. Chaudhry's services, and this is also true of

25  Mr. Ginsberg, who is your lawyer for some other purposes, if

X1CLSWARSAME                    SEALED

1   you were not happy with their services, you could tell me so

2   and I would ask some questions and if I thought there was a

3   problem I would appoint a new lawyer to represent you without

4   charge.

5           Do you understand that?

6   A.  Yes, your Honor.

7   Q.  Okay.

8           Are you satisfied with the services that Ms. Chaudhry

9   has provided you with until this date?

10  A.  Yes, your Honor.

11  Q.  Thank you.

12          Okay.  This is Mr. O'Neill.  Mr. O'Neill is going to

13  ask you to raise your right hand and to swear or to affirm that

14  you will tell the truth here in court answering my questions.

15          Mr. O'Neill.

16          (Defendant sworn)

17  BY THE COURT:

18  Q.  Okay.

19          Mr. Warsame, if you lie to me during these

20  proceedings, if you lie to me, if you tell me something that is

21  not true, the government can charge you with the crime of

22  perjury, lying under oath.  And I can send you to prison or the

23  judge in that case can send you to prison for 5 years for lying

24  to me or fine you $250,000 for lying to me.  And that is

25  totally separate and apart from the crimes we are going to be

X1CLSWARSAME                    SEALED

1   talking about today.

2          Do you understand?

3   A.  Yes, your Honor.

4   Q.  Mr. Warsame, what is your full name?

5   A.  Your Honor, my full name is Ahmed Abdulkadir Warsame.

6   Q.  Ahmed Abdulkadir Warsame?

7   A.  Yes, your Honor.

8   Q.  Have you also been known from time to time by the name

9   Khatab?

10  A.  Yes, your Honor.

11  Q.  By the name Farah?

12  A.  Yes, your Honor.

13  Q.  By the name Abdik Haleem Mohammed Farah?

14  A.  Yes, your Honor.

15  Q.  By the name Fareh Jamah Ali Mohammed?

16  A.  Yes, your Honor.

17  Q.  How old are you, sir?

18  A.  I am 25 years old now.

19  Q.  You obviously understand the English language.  Do you read

20  any English?

21  A.  Yes, your Honor, I write, read and understand very good

22  English.

23  Q.  Thank you, sir.  You do speak English very well.

24          What is your highest level of education?

25  A.  I spent 6 years studying until I reached college in the

X1CLSWARSAME                    SEALED

1   United Kingdom.

2   Q.   So college level in the United Kingdom?

3   A.   Yes, your Honor.

4   Q.   Have you ever been put in a hospital for drug or alcohol

5   addiction?

6   A.   No, your Honor.

7   Q.   Have you taken any kind of drugs or medicine or ingested

8   any alcohol in the last 24 hours?

9   A.   Are you on any medicines?  Are they giving you any

10  medicines in the prison?

11  A.   I have an injury in my lungs and the doctors in the MCC

12  prescribe me some medicines, yes, your Honor.

13  Q.   Do you know what the medicines are?

14  A.   They said it's painkillers and stomach pain, and also they

15  prescribe me antidepression tablets, but I did not use it.

16  Q.   You have not used the antidepressant?

17  A.   No, your Honor.

18  Q.   You have used the medicine for the stomach pain?

19  A.   Yes.

20  Q.   Does it ever make you dizzy or cloudy in your mind so you

21  can't think clearly?

22  A.   No, your Honor.

23  Q.   Are you clear in your mind today?

24  A.   Yes, your Honor.

25          THE COURT:  The court notes that the defendant is

X1CLSWARSAME.              SEALED

1    presenting with an absolutely correct demeanor.  He is plainly

2    oriented.  There is absolutely no sign of any sort of

3    impairment that might have resulted from his use of medication

4    or from anything else for that matter.

5           Now, I have in front of me a letter.  The letter is

6    dated yesterday, December 20, 2011.  The letter is written on

7    the stationery of the United States Attorney's Office for the

8    Southern District of New York.  It is addressed to Ms. Chaudhry

9    and to her co-counsel, Lee Ginsberg.  It is a total of 7 pages

10   long and it is signed by Mr. Naftalis and by Jonathan Kolodner,

11   the acting Chief of the Criminal Division of the United States

12   Attorney's Office.  I have been given the original of this

13   letter as well.

14          Do you have a copy of this letter, Ms. Chaudhry, that

15   you and your client can use?

16          MS. CHAUDHRY:  Yes, your Honor.

17   BY THE COURT:

18   Q.  Mr. Warsame, I am looking at this letter and on the last

19   page of the letter under "agreed and consented to" it says

20   Ahmed Warsame, and the date is put in 12/21/2011.

21          Sir, did you put your name on that page?

22   A.  Yes, your Honor.

23   Q.  You wrote it with your own hand?

24   A.  Yes, the date and the name.

25   Q.  The date and the name, okay.

X1CLSWARSAME              SEALED

1              THE COURT:  Ms. Chaudhry, did you also sign this

2    letter?

3              MS. CHAUDHRY:  Yes, I did, your Honor.

4              THE COURT:  Thank you, Ms. Chaudhry.

5    BY THE COURT:

6    Q.  Let's talk about this letter.  This letter is an agreement

7    between you and the United States government personified in the

8    Department of Justice, the United States Attorney's Office,

9    which is the prosecutor in this case.

10             The first thing you need to understand is my signature

11   is not on this letter.  I had nothing to do with preparing it.

12   Until I was handed it I didn't know what was in it and I am not

13   a party to it, which means I am not bound by anything in this

14   letter.

15             Do you understand that?

16   A.  Yes, your Honor.

17   Q.  I know that may seem a little strange, but that is the way

18   things work here so I just wanted you to be clear that it's an

19   agreement between you and the folks at the front table but not

20   an agreement between you or them and me.

21             Do you understand that?

22   A.  Yes, your Honor.

23   Q.  Let's talk about the letter.  The letter outlines the

24   charges against you.  I need to tell you on the record what

25   those charges are, even though you know what they are.  I

X1CLSWARSAME              SEALED

1   assume, by the way, you went over this letter with Ms. Chaudhry

2   before you signed it, didn't you?

3   A.   Yes, your Honor.

4   Q.   Every single page of it?

5   A.   Yes, your Honor.

6   Q.   And did you have a lot of opportunity, enough opportunity,

7   to ask her about the letter and what you are proposing to do

8   today?

9   A.   Yes, your Honor.

10   Q.   And are you satisfied you have had enough time to talk to

11   her and to consider whether or not to sign this letter and to

12   take a plea?

13   A.   Yes, your Honor.

14   Q.   Okay.

15         The record should reflect that Counts 1 and 2 of the

16   indictment, 11 Cr. 559, charge Mr. Warsame with a violation of

17   of 18, United States Code, Section 2339(b) in connection with a

18   conspiracy to provide, and provision of, and the aiding and

19   abetting of provision of material support to an organization

20   known as al Shabaab, from in or about 2007 up to in or about

21   April 2011, causing death.  Each of Counts 1 and 2 carries a

22   maximum sentence of life imprisonment, a maximum lifetime term

23   of supervised release, a maximum fine of the greater of

24   $250,000 or twice the gross pecuniary gain derived from the

25   offense or twice the gross pecuniary loss to a person other

X1CLSWARSAME                    SEALED

1     than the defendant as a result of the offense, and a mandatory

2     $100 special assessment.

3           Count 3 charges the defendant with using, carrying and

4     possessing firearms, namely, an AK-47 semi-automatic assault

5     weapon, machine guns and destructive devices, and aiding and

6     abetting the same during, and in relation to, and in

7     furtherance of the crimes of violence that are charged in

8     Counts 1 and 2 in violation of 18, United States Code, Section

9     924(c).  This charge carries a statutory maximum sentence of

10    lifetime imprisonment with a mandatory minimum term of 30 years

11    imprisonment -- and the sentence on this count must be imposed

12    consecutive to any other term of imprisonment -- a maximum term

13    of supervised release of 5 years, a maximum fine of the greater

14    of $250,000 or twice the gross pecuniary gain to the defendant

15    or loss to identifiable victims other than the defendant, and a

16    mandatory $100 special assessment.

17          Counts 4 and 5 charge the defendant with violating 18,

18    United States Code, Section 2339(b) in connection with a

19    conspiracy to provide, the provision of, and the aiding and

20    abetting of the provision of material support to an

21    organization known as AQAP, al-Qaeda in the Arabian Peninsula,

22    from in or about 2009 up to and including in or about 2011.

23    Each of these counts carries a statutory maximum sentence of 15

24    years imprisonment, a maximum term of lifetime supervised

25    release, a maximum fine of the greater of $250,000 or twice the

1    gross pecuniary gain to the defendant or loss to identifiable

2    victims other than the defendant, and a mandatory $100 special

3    assessment.

4         Count 6 charges the defendant with using, carrying and

5    possessing firearms, once again an AK-47 semi-automatic assault

6    weapon, machine guns, grenades and ammunition, and aiding and

7    abetting the same during and in relation to and in furtherance

8    of the crimes charged in Counts 4 and 5, which are crimes of

9    violence in violation of 18, United States Code, Section

10   924(c).

11        Count 6 carries a statutory maximum sentence of

12   lifetime imprisonment, a mandatory minimum term of 30 years

13   imprisonment, which must be imposed consecutive to any other

14   term of imprisonment, and upon conviction of both Count 3 and

15   Count 6 a mandatory minimum term of lifetime imprisonment, a

16   maximum term of supervised release of 5 years, a maximum fine

17   of the greater of $250,000 or twice the gross gain to the

18   defendant or loss to identifiable victims other than the

19   defendant, and a mandatory $100 special assessment.

20        Count 7 charges the defendant with conspiring to teach

21   and demonstrate the making of explosives in violation of 18,

22   United States Code, Sections 842(p) and 844(n).  This charge

23   carries a maximum sentence of 20 years imprisonment, a maximum

24   term of supervised release of 3 years, a maximum fine of the

25   greater of $250,000 or twice the gross gain to the defendant or

X1CLSWARSAME                    SEALED

1    loss to identifiable victims other than the defendant, and a

2    mandatory $100 special assessment.

3         Count 8 charges the defendant with conspiring to

4    receive military-type training from a foreign terrorist

5    organization in violation of 18, United States Code, Sections

6    2339D and 371.  This charge carries a statutory maximum

7    sentence of 5 years imprisonment, a maximum term of supervised

8    release of 3 years, a maximum fine of the greater of $250,000

9    or twice the gross pecuniary gain derived from the offense to

10   the defendant or loss to identifiable victims other than the

11   defendant, and a mandatory $100 special assessment.

12        And, finally, Count 9 charges the defendant with

13   receiving military-type training from a foreign terrorist

14   organization and aiding and abetting such training in violation

15   of 18, United States Code, Section 2339D.  This carries a

16   maximum sentence of ten years imprisonment, a maximum term of

17   lifetime supervised release, a maximum fine pursuant to Title

18   18, United States Code, of the greater of $250,000 or twice the

19   gross pecuniary gain derived from the offense to the defendant

20   or the gross pecuniary loss to persons other than the

21   defendant, and a mandatory $100 special assessment.

22        Mr. Warsame, the total maximum sentence if you were

23   convicted on all of the foregoing counts is life imprisonment.

24   If you you were convicted of all of the foregoing counts the

25   mandatory minimum term of imprisonment is life imprisonment.  I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X1CLSWARSAME                SEALED

1   understand that there are forfeiture allegations as well with

2   respect to Counts 1, 2, 4, 5, 7, 8 and 9, and that the

3   defendant has agreed to forfeit to the United States all right,

4   title and interest in all assets, foreign and domestic, derived

5   from, involved in, and used, and intended to be used, to commit

6   a federal crime of terrorism against the United States,

7   citizens and residents of the United States, and their

8   property.  It being further understood that any forfeiture of

9   the defendant's assets shall not be treated in satisfaction of

10  any fine, restitution, cost of imprisonment or any other

11  financial penalty that the court may impose upon him in

12  addition to forfeiture.

13          Now, why have I read all those things to you when you

14  already went over them with Ms. Chaudhry?  Well, the answer to

15  that question, Mr. Warsame, is I want to be sure that you heard

16  them and that you know what is the worst I can do to you if you

17  decide to plead guilty.

18          Do you understand what I have just gone through and

19  summarized for you?

20  A.  Yes, your Honor.

21  Q.  And have you discussed that with Ms. Chaudhry?

22  A.  Yes, your Honor.

23  Q.  Is this agreement, this letter that you signed today, is

24  that the entire agreement and understanding that you have with

25  the government?

X1CLSWARSAME                    SEALED

1   A.  Yes, your Honor.

2   Q.  You need to understand that if there are any like secret

3   sides deals that aren't written down here, then I don't have to

4   take them into account when I ultimately decide your fate, when

5   I decide how to sentence you.

6          Do you understand that?

7   A.  Yes, your Honor.

8          THE COURT:  Are there any secret side deals of which I

9   should be aware, Mr. Naftalis?

10         MR. NAFTALIS:  No, your Honor.

11         THE COURT:  Ms. Chaudhry?

12         MS. CHAUDHRY:  No, your Honor.

13  BY THE COURT:

14  Q.  Mr. Warsame, when you signed this letter earlier today did

15  you do it of your own free will?

16  A.  Yes, your Honor.

17  Q.  Did anyone threaten you or coerce you?  Did anyone put a

18  gun to your head?  Did anyone say, "I am going to do something

19  bad to your family unless you sign this letter?"  Did anyone

20  say or do anything like that to get you to sign this letter?

21  A.  No, your Honor.

22  Q.  All right.

23         Now, the offenses that are in the letter, and we have

24  already gone over the possible punishments for those offenses,

25  they are what we call felonies.  Felony means serious crime.

X1CLSWARSAME                    SEALED

1    If you plead guilty to felonies you will lose, under our system

2    of laws, certain civil rights.  If you were a citizen you would

3    lose the right to vote, and the right to hold public office,

4    and the right to serve on a jury.  Whether you are a citizen or

5    not, you lose the right to possess any type of firearm or

6    destructive device and the right to possess or obtain certain

7    professional licenses.

8              Do you understand that?

9    A.  Yes, your Honor.

10   Q.  I take it, sir, that you are not an American citizen, is

11   that correct?

12   A.  Yes, your Honor.

13   Q.  So if you are found guilty of a felony by plea or

14   otherwise, it will have an adverse impact on your immigration

15   status and on any application that you may have pending or that

16   you may wish to make in the future for permission to remain in

17   the United States or to become a United States citizen.

18             Do you understand that?

19   A.  Yes, your Honor.

20   Q.  I understand that there is in this letter agreement with

21   the government some discussion at the bottom of page 6 and the

22   top of page 7 concerning the fact that the guilty plea makes it

23   very likely that the defendant will be deported from the United

24   States and that the defendant had discussed the possible

25   immigration consequences, including deportation, of his guilty

X1CLSWARSAME                SEALED

1    plea and conviction with defense counsel.

2           Did you, in fact, talk about those things with Ms.

3    Chaudhry?

4    A.   Yes, your Honor.

5           THE COURT:  Ms. Chaudhry, did you discuss the

6    immigration consequences of a plea with your client?

7           MS. CHAUDHRY:  I did, your Honor.

8           THE COURT:  Okay.

9    BY THE COURT:

10   Q.   Let me take a sip of water.  Now, we will go on.

11          Now, I have told you what the possible punishments are

12   if you plead guilty to the crimes charged in the indictment.

13   This is an unusual case, the first in my experience, because by

14   law if you were to plead guilty to all the crimes that are

15   charged in the indictment, which is what I understand you are

16   planning to do, the minimum sentence that I can give you is

17   lifetime in prison, which is also the maximum sentence that I

18   can give you.  That is what we call the guideline range.

19          THE COURT:  And because of that I think it's not

20   necessary to explain to the defendant the Sentencing Guidelines

21   and the calculation of the guidelines.  The mandatory minimum

22   is life imprisonment if the defendant pleads guilty to Counts 3

23   and 6, is that not correct, Mr. Naftalis?

24          MR. NAFTALIS:  That is correct, your Honor.

25          THE COURT:  Right, okay.

X1CLSWARSAME                    SEALED

1   BY THE COURT:

2   Q.  So there is no guideline to be computed.  The guideline is

3   a mandatory minimum by law and the mandatory minimum is life.

4           Do you understand that?

5   A.  Yes, your Honor.

6   Q.  Now, I know it says mandatory minimum and "mandatory" means

7   it has to be.  There is no way out.  But there is, of course, a

8   way out of a mandatory minimum sentence and that has to do with

9   whether the government at some point in time comes to me as the

10  judge and makes an application, a motion, to have you sentenced

11  without regard to the mandatory minimum.  The law passed by

12  Congress gives the government the right to do that if you

13  provide substantial assistance to the government.

14          Do you understand that?

15  A.  Yes, your Honor..

16  Q.  In our law we used to have something called parole when

17  defendants were assessed and sometimes they could be released

18  before the end of their sentences, and that was gotten rid of

19  some years ago.  It was abolished.

20          So do you understand that you will never be eligible

21  for early release on parole?

22  A.  Yes, your Honor.

23  Q.  Now, some day the day is going to come when I am going to

24  sentence you.  Whether I sentence you to life imprisonment or

25  something less than life imprisonment, depends on things that

X1CLSWARSAME              SEALED

1   will happen after today between you and the government in the

2   conduct of other investigations and cases.

3           In the end, I am going to have to make a decision

4   about what your punishment should be.  And you need to

5   understand that if you plead guilty today and some day in the

6   future I say this is your punishment, this is your sentence,

7   and you don't like what I say, that doesn't mean you can stand

8   up and say, Judge, now I want to go to trial.  I don't want to

9   plead guilty anymore.

10          Do you understand that?

11  A.  Yes, your Honor.

12  Q.  Ahmed Abdulkadir Warsame, do you understand that you do not

13  have to plead guilty in this matter?  You have an absolute

14  right to plead not guilty and to have this matter tried either

15  to a judge or to a jury of 12 people?

16  A.  Yes, your Honor.

17  Q.  Do you understand that if you decide you want to plead not

18  guilty, you are entitled to a speedy and public trial of your

19  case?

20  A.  Yes, your Honor.

21  Q.  At any trial do you understand that you would be entitled

22  to the presumption of innocence and that the presumption would

23  remain with you until such time as the government proved each

24  and every element of the crimes with which it has charged you

25  beyond a reasonable doubt to the satisfaction of the trier of

X1CLSWARSAME                    SEALED

1    fact?

2    A.   Yes, your Honor.

3    Q.   Do you understand that at such a trial you would have the

4    right to confront and cross examine -- with the assistance of

5    your attorney -- witnesses who were called against you?  You

6    would have the right to call witnesses to testify for you.  You

7    would have the right to have me sign subpoenas, documents that

8    compel, that force people to come to court and give testimony

9    on your behalf, and you would have the right to testify at any

10   trial, but you could not be forced to to testify, and if you

11   chose not to testify, no unfavorable inference would be drawn

12   against you because of your choice.

13            Do you understand that?

14   A.   Yes, your Honor.

15   Q.   Finally, at such a trial you would have the right, that I

16   spoke of before, to the assistance of an attorney and to have

17   an attorney appointed to represent you without fee if you could

18   not afford a lawyer.

19            Do you understand that?

20   A.   Yes, your Honor.

21   Q.   Mr. Warsame, do you understand that if you plead guilty to

22   the charges that we have discussed today that are contained in

23   the indictment and that are outlined in this letter that you

24   signed this afternoon, you are giving up your right to a trial

25   and, except for the right to continue to be represented by a

X1CLSWARSAME                    SEALED

1    lawyer, you are also giving up all of the other rights that I

2    just explained to you?

3    A.  Yes, your Honor.  I understand.

4    Q.  Mr. Warsame, has anyone threatened you or coerced you or

5    put any kind of improper pressure on you in order to get you to

6    change your plea?

7    A.  No, your Honor.

8    Q.  Has anyone made any promises to you except what the

9    government promised in this letter agreement, the letter of

10   December 20, 2011, in order to get you to change your plea?

11   A.  No, your Honor.

12   Q.  Has anyone told you Judge McMahon is going to sentence you

13   to any specific amount of time if you change your plea?

14   A.  No, your Honor.

15   Q.  The court states that it has made no promises with respect

16   to sentencing.

17           THE COURT:  Mr. Naftalis, what is the government

18   prepared to prove at trial?

19           MR. NAFTALIS:  Your Honor, would you like me to go

20   through all the counts at this time?

21           THE COURT:  I think it's probably easier -- well, Ms.

22   Chaudhry, you tell me how you would prefer toto to proceed.

23   Would you like to go through these one count at a time or would

24   you prefer to have Mr. Naftalis do them all and then let your

25   client allocute to all of them?

X1CLSWARSAME          SEALED

1           MS. CHAUDHRY:  He should go through all of them and

2    then we can go through all of them.

3           THE COURT:  Thank you.

4           Mr. Naftalis, I will hear you on all counts.

5           MR. NAFTALIS:  As to Counts 1 and 4, which charge a

6    violation of 18 U.S.C. 2339B, and that is conspiracy to provide

7    material support to al Shabaab in Count 1 and AQAP in Count 4,

8    the government would have to prove beyond a reasonable doubt,

9    first, that the defendant agreed with more than one person to

10   provide material support and resources to an organization;

11          2.  That that organization had, in fact, been

12   designated as a terrorist organization pursuant to Section 219

13   of the INA; and,

14          3.  That the defendant knew that that organization

15   had, in fact, been designated as such or that the organization

16   engages in or has engaged in terrorist activity or terrorism.

17   In addition, as to Count 1, which charges the death of others,

18   we would have to prove that the conduct caused the actual death

19   of another person.

20          As to Counts 2 and 5, which charge -- 18 U.S.C.

21   2339B -- the actual providing of material support, the

22   government would have to prove, first, that the defendant

23   knowingly provided material support and resources to an

24   organization;

25          2.  That that organization had been designated as a

X1CLSWARSAME                SEALED

1   foreign terrorist organization under the INA; and,

2          3.   That the defendant knew that the organization had,

3   in fact, been designated as such or engaged in such acts of

4   terrorism or terrorist activities.  And, 4, as to Count 2, that

5   death was caused.

6          As to Counts 3 and 6, which are the 924(c) counts, the

7   government would have to prove, first, that the defendant

8   committed a crime of violence for which he might be prosecuted

9   in a U.S. court;

10          2.   That the defendant knowingly used and carried a

11  firearm during and in relation to the commission of, or

12  knowingly possessed a firearm in furtherance of the crime

13  charged; and,

14          3.   That the firearm in question included a

15  destructive device or machine gun.

16          As to Count 7, the 844(n) count, the government would

17  have to prove, first, that the defendant agreed with more than

18  one person to teach or demonstrate the making and use of

19  explosives, destructive devices, and weapons of mass

20  destruction; or,

21          2.   That he agreed to distribute information

22  pertaining to the manufacture and use of such weapons;

23          3.   That the conspirators, including Warsame, intended

24  that the teaching, demonstration and information be used for,

25  and in furtherance of, a federal crime of violence.

X1CLSWARSAME                    SEALED

Count 8, which is a 371 count related to military-type training, the government would have to prove, first, that the defendant agreed with more than one person to receive military-type training from and on behalf of a designated organization.

2. That the defendant knowingly and intentionally became a member of that organization; and,

3. That at least one member or co-conspirator took an act to effect the object of that conspiracy.

Count 9, which is the 2339D count, the government would have to prove, first, that the defendant knowingly received military-type training from and on behalf of an organization;

2. At the time he received the training, the organization was designated as such as an FTO; and,

3. That the defendant knew that the organization was designated or that it engages in or had engaged in terrorism or terrorist activity.

THE COURT:  Thank you, Mr. Naftalis.

BY THE COURT:

Q.  Mr. Warsame, do you still think that you want to plead guilty to the crimes that the government has charged you with?

A.  Yes, your Honor.

Q.  In that case I need for you to tell me what it is that you did to commit those crimes.  I understand that you and Ms.

X1CLSWARSAME                    SEALED

1   Chaudhry have prepared a statement and I am prepared to listen

2   to that at this time.

3   A.   Your Honor, Counts 1, 2 and 3:  From 2007 until April 2011,

4   in Somalia and Yemen, I knowingly conspired with others,

5   including American citizens, to provide material support to al

6   Shabaab, which I knew is listed as a foreign terrorist

7   organization.  Further, I provided material support to al

8   Shabaab by fighting as a soldier on behalf of al Shabaab, and I

9   possessed and used weapons, including a machine gun and

10  automatic weapons, in my role as a soldier for al Shabaab.  I

11  joined al Shabaab to fight the Ethiopian invasion of my native

12  country, Somalia.  As a result of my participation in this

13  conspiracy, at least one person died in Somalia.

14  Q.   Let me stop you there for one moment.

15          Does the government know of any other information that

16  I should receive from Mr. Warsame before I can accept his

17  allocution on Counts 1, 2 and 3?

18          MR. NAFTALIS:  No, your Honor.

19          THE COURT:  Do you, Ms. Chaudhry?

20          MS. CHAUDHRY:  No, your Honor.

21          THE COURT:  Thank you.

22  BY THE COURT:

23  Q.   Go on please.

24  A.   Counts 4, 5 and 6:  From 2009 to April 2011, in Somalia and

25  Yemen, I knowingly conspired with others, including American

X1CLSWARSAME                  SEALED

1    citizens, to provide material support to al-Qaeda in the
2    Arabian Peninsula, which I knew is listed as a foreign
3    terrorist organization.   I provided material support by
4    arranging for al Shabaab to buy weapons from al-Qaeda in the
5    Arabian Peninsula, and I also received explosives and weapons
6    training from al-Qaeda for al Shabaab's benefit.   From 2010 to
7    2011 while in Yemen, I possessed weapons and explosive devices,
8    including a machine gun and automatic weapons, while receiving
9    training from al-Qaeda.
10   Q.   Okay.
11          THE COURT:   Does the government know of any additional
12   information that I need to elicit from Mr. Warsame with
13   relation to Counts 4, 5 and 6?
14          MR. NAFTALIS:   No, your Honor.
15          THE COURT:   Ms. Chaudhry, do you?
16          MS. CHAUDHRY:   No, your Honor.
17   BY THE COURT:
18   Q.   You may continue, sir.
19   A.   Your Honor, Count 7:   From 2010 to 2011, in Yemen, I
20   knowingly conspired with others to teach and demonstrate the
21   making of explosives and destructive devices.   Specifically,
22   members of al-Qaeda in the Arabian Peninsula taught me about
23   explosives and destructive devices.   I was not a member of
24   al-Qaeda and I did this for al Shabaab's benefit, intending to
25   share what I learned and the materials I gathered when I

X1CLSWARSAME                    SEALED

1     returned to Somalia.

2          THE COURT::  Does the government know of any

3     information that I need to elicit additionally from Mr. Warsame

4     with respect to Count 7?

5          MR. NAFTALIS:  I think that is fine, your Honor.

6     Thank you.

7          THE COURT:  Ms. Chaudhry, anything?

8          MS. CHAUDHRY:  No, your Honor.

9     BY THE COURT:

10    Q.  Sir, you may continue.

11    A.  Counts 8 and 9:  From 2010 to 2011, in Yemen, I knowingly

12    conspired with others to receive military-type training from

13    al-Qaeda on behalf of al Shabaab.  Specifically, members of

14    al-Qaeda taught me about explosives and destructive devices,

15    and also gave me other military training, such as topography.

16    I was not a member of al-Qaeda and I did this to support al

17    Shabaab.

18          THE COURT:  Does the government know of anything else

19    I need to elicit with respect to Counts 8 and 9?

20          MR. NAFTALIS:  The only thing I would ask to elicit on

21    Count 8 is that the defendant conspired with at least one other

22    U.S. citizen or who he believed to be a U.S. citizen.

23    BY THE COURT:

24    Q.  Were any of the people that you knowingly conspired with

25    American citizens?

X1CLSWARSAME                    SEALED

1              You can talk to Ms. Chaudhry.

2    A.   Thank you, your Honor.

3              (Pause)

4              MR. NAFTALIS:   Your Honor, may we have a moment?

5              THE COURT:   Yes, absolutely.

6              (Pause)

7              THE COURT:   We are going back on the record.

8    A.   Your Honor, in Counts 8 and 9 --

9              MS. CHAUDHRY:   I think he lost his place.   He was

10   going to repeat his allocution.   I think the government's

11   questions were American citizens involved in Counts 8 and 9 to

12   conspire with American citizens.

13   A.   Yes, the conspiracy was also in Yemen and Somalia.

14   Q.   It was in Yemen and Somalia but were any American citizens

15   in the group of people that you conspired with?

16   A.   Yes, your Honor.

17   Q.   That is what we needed.   Okay, thank you.

18             THE COURT:   Anything else you think needs to be

19   elicited, Ms. Chaudhry?

20             MS. CHAUDHRY:   No, your Honor.

21   BY THE COURT:

22   Q.   Mr. Warsame, these things that you have just told me that

23   you did, did you do all of them of your own free will?

24   A.   Yes, your Honor.

25   Q.   And you have admitted to when and where you committed these

X1CLSWARSAME                    SEALED

1    acts.

2            THE COURT:  Ms. Chaudhry, do you know of any reason

3    why I should not accept a plea of guilty from your client to

4    each and every count in the indictment?

5            MS. CHAUDHRY:  I do not, your Honor.

6            THE COURT:  Mr. Naftalis, does the government know of

7    any reason why I should not accept a plea of guilty from Mr.

8    Warsame to each and every count in the indictment?

9            MR. NAFTALIS:  No, your Honor.

10            THE COURT:  And can either of you think of anything

11   that I haven't covered?

12            MR. NAFTALIS:  Your Honor, in an abundance of caution,

13   as to the guidelines your Honor correctly noted that the

14   guidelines is a moot point here, but I would only ask that you

15   advise the defendant that at sentencing a PSR will be prepared

16   in connection with that sentencing.

17            THE COURT:  Just so you know, Mr. Warsame, I told you

18   I will be the one who decides who your sentence is to the

19   extent that I am able to do so consistent with the law, and

20   before I make up my mind a probation officer will talk to you

21   and to Ms. Chaudhry, with Mr. Ginsberg, to the government, to

22   the FBI, and she or he will prepare a big report about you so

23   that I know who you are and what you have done, and lots of

24   things about you.  And you will get to see that report, and Ms.

25   Chaudhry will get to see that report before I see it, and you

X1CLSWARSAME              SEALED

1  will get a chance to tell the probation officer to make

2  corrections to the report, and so will the government, and all

3  of that will happen, and then the document will come to me, so

4  I will have all that information before I make up my mind about

5  the sentence.  And I will also listen to the government before

6  I make up my mind.  And I will listen to Ms. Chaudhry make

7  arguments to me before I make up my mind, arguments on your

8  behalf.  I will listen to you.  You can talk to me before I

9  make up my mind on the sentence.

10             Do you understand that all of that?

11             THE DEFENDANT:  Yes, your Honor, I do.

12             THE COURT:  Anything else, Mr. Naftalis?

13             MR. NAFTALIS:  In an abundance of caution, your Honor,

14  only that the defendant has reviewed the indictment and the

15  charges with his counsel with the aid of an interpreter, if

16  necessary.

17             THE COURT:  Why didn't we do that at the beginning,

18  Mr. Naftalis?

19             MR. NAFTALIS:  This is the first opportunity I had.

20             THE COURT:  You can always jump up, Mr. Naftalis.

21             MR. NAFTALIS:  I am very shy.

22             THE COURT:  It's not in your jeans.

23  BY THE COURT:

24  Q.  Did Ms. Chaudhry go over the actual indictment, the

25  document that charged you with the crime?  Did she go over that

X1CLSWARSAME                  SEALED

1   with you?

2   A.  Yes, your Honor.

3   Q.  And did you have the opportunity to talk with her through

4   an interpreter if you needed to do that?

5   A.  No, I didn't have an interpreter.

6   Q.  Is that because you didn't want an interpreter?

7   A.  Because my understanding is very good and I didn't need it.

8   Q.  I really think that if Mr. Warsame has established anything

9   beyond a reasonable doubt to the satisfaction of today's trier

10  of fact, who is the court, he has established that he is quite

11  fluent in the English language.  And I will note for the record

12  that Mr. Warsame had before him an allocution, a written

13  allocution, and that when he found a typographical error in it,

14  and it's written in English, he corrected it.  I should be so

15  lucky with many of my native-born American defendants.

16         Ahmed Abdulkadir Warsame, how do you plead to Count 1,

17  conspiracy to provide material support to al Shabaab, guilty or

18  not guilty?

19  A.  Guilty, your Honor.

20  Q.  How do you plead to Count 2, providing material support to

21  al Shabaab, guilty or not guilty?

22  A.  Guilty, your Honor.

23  Q.  How do you plead to Count 3, possessing, carrying and using

24  a firearm and destructive device in connection with Counts 1

25  and 2, guilty or not guilty?

X1CLSWARSAME                    SEALED

1   A.  Guilty, your Honor.

2   Q.  How do you plead to Count 4, conspiracy to provide material

3   support to al-Qaeda in the Arabian Peninsula, guilty or not

4   guilty?

5   A.  Guilty, your Honor.

6   Q.  How do you plead to Count 5, providing material support to

7   al-Qaeda in the Arabian Peninsula, guilty or not guilty?

8   A.  Guilty, your Honor.

9   Q.  How do you plead to Count 6, possessing, carrying and using

10  a firearm and destructive device in respect of the crimes

11  charged in Counts 4 and 5, guilty or not guilty?

12  A.  Guilty, your Honor.

13  Q.  How do you plead to Count 7, conspiracy to teach and

14  demonstrate the making of explosives, guilty or not guilty?

15  A.  Guilty, your Honor.

16  Q.  How do you plead to Count 8, conspiracy to receive

17  military-type training from a foreign terrorist organization,

18  guilty or not guilty?

19  A.  Guilty, your Honor.

20  Q.  And how do you plead to Count 9, receipt of military

21  training from a foreign terrorist organization, guilty or not

22  guilty?

23  A.  Guilty, your Honor.

24        THE COURT:  Upon this allocution I find that the

25  defendant is fully competent and capable of entering an

X1CLSWARSAME          SEALED

1  informed plea.  The plea is knowing and voluntary and is

2  supported by independent factual basis for each and every

3  element of the crime charged in the indictment.  Accordingly,

4  the defendant is adjudicated guilty of Counts 1, 2, 3, 4, 5, 6,

5  7, 8 and 9 as charged in indictment number 11 Cr. 559.

6         You may be seated, sir.

7         THE DEFENDANT:  Thank you, your Honor.

8         THE COURT:  Now, I am obviously not going to direct

9  that a presentence investigation be conducted at this time.

10  Eventually we will get there and eventually there will be a

11  presentence investigation and I have explained that process to

12  Mr. Warsame already.

13         Now, it should be understood, I was advised before

14  this proceeding, and I perceived that during the proceeding no

15  SEPA information is contained in the transcript of this

16  proceeding, so when we are able to unseal, the entire

17  transcript will be unsealed.

18         Is that the government's understanding, Mr. Naftalis?

19         MR. NAFTALIS:  It is.

20         THE COURT:  Ms. Chaudhry?

21         MS. CHAUDHRY:  Yes, your Honor.

22         THE COURT:  Okay.

23         Counsel, thank you very much.

24         Mr. Warsame, thank you very much.

25         These proceedings are closed.